[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage which was referred by the Middlesex Judicial District to the Regional Family Trial Docket. Prior to the commencement of trial the parties reached agreement on custody and visitation issues and signed a written agreement dated October 10, 2000. It was approved by the court on the same day and will be incorporated by reference as part of the court's decree. Over 6 trial days the parties presented evidence on financial issues including child support, alimony, health insurance, division of assets and liabilities, as well as counsel fees. The court heard testimony from the parties, an accountant, an attorney who represented the parties in bankruptcy, and several other witnesses. Multitudinous exhibits were entered into evidence. The court has considered all of the credible evidence and all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here.
It is commendable that the parties were able to reach agreement on custody and visitation issues. Unhappily they engaged in a long, expensive, acrimonious trial over finances when it is plain that their debts far exceed their assets. They were literally fighting over nothing. To paraphrase Hamlet, the trial was full of sound and fury but signified nothing. A little common sense would have saved both of them a lot of money. The court makes the following findings of facts and issues the following orders.
The court finds that it has jurisdiction over the marriage. One party has resided in Connecticut continually for more than one year prior to the bringing of this action. The parties were married on June 25, 1988. They have 2 minor children issue of the marriage, namely Katherine Gamble, born October 17, 1989, and Kelsey Gamble, born September 18, 1992. No other minor children have been born to the wife since the date CT Page 4287 of the marriage. The parties have not been recipients of state assistance. The marriage of the parties has broken down irretrievably with no hope of reconciliation.
The plaintiff is 40 years old. She is in good health. This is her second marriage. She has an adult son from her first marriage. She has a high school education plus two years of college. The plaintiff came to the marriage with approximately $72,000 received from the resolution of the case dissolving her prior marriage. The plaintiff works as a teacher's aid at the Belltown Learning Center Day Care where her gross weekly income is $326.19 and her net weekly income is $284.24. The plaintiff participates in the Connecticut HUSKY Plan for the children's medical and dental insurance.
The defendant is 53 years old. This is his second marriage. He has no other children. He is being treated for high blood pressure, but is otherwise in good health. The defendant came to the marriage with the following assets: 1) a 50% interest in the Dark Room, a photography company of unknown value, 2) a 29 foot O'Day sailboat with an unknown value, and 3) a 29 foot Bayfield sailboat with an unknown value.
The defendant's earnings are difficult to determine. He is the CEO of a small corporation through which he runs many of his personal expenses. The payment of these personal expenses amounts to a perquisite which should be included in his gross income. See, Child Support and Arrearage Guidelines, Section 46b-251a-1(11)(A)(v). Also, the defendant is cohabitating with his girl friend who is paying many of the household expenses. Finally, the defendant's earnings shown on his financial affidavits filed during the course of this case show a steady decline. His affidavit of November 1, 1999 shows a gross of $800.03 and a net of $575.56. His financial affidavit of July 29, 2000 shows a gross of $685.72 and a net of $494.69. His present financial affidavit shows a gross of $531.76 and a net of $384.61. The defendant's explanation of the causes for this downward trend are not convincing. Having considered all of the testimony and the many pounds of financial data submitted by the parties, the defendant's gross earnings are found to be $800.03 per week and $575.65 net per week.
Using a net of $575.56 for the defendant and a net of $284.24 for the plaintiff results in presumptive child support of $189 per week plus $15 per week for the defendant's share of child care costs for a total of $204 per week. Paragraph seven of the parties stipulation as to custody and visitation provides:
"Child Support. The parties acknowledge that the access schedule does not support a deviation from the child support guidelines and father CT Page 4288 shall pay support to mother in accordance with the guidelines. However, during the six weeks that father has the children in the summer he shall pay a reduced amount of support. Said reduction shall be at least 1/3 reduction with father preserving his right to argue to the court for a larger reduction."
A reduction in child support to $120 per week is found to be fair and reasonable for the period of six weeks when the defendant has the children in the summer.
The parties own a house at 91 Airline Road in Clinton which they purchased for $162,212.50 in 1988. They obtained bank financing from Liberty Bank, the defendant provided a $5,000 deposit, and the defendant provided approximately $72,000 in cash to complete the purchase. The house is situated on a one-half acre lot in a wooded residential neighborhood on the north side of Route 95 approximately two miles from Long Island Sound. The parties disagree as to value. There was no appraisal testimony. The best evidence of value is the sum of $111,000 which the parties assigned to the property, under oath, in their joint bankruptcy petition in March 1999. This is found to be the current fair market value. The principal balance on the Liberty Bank mortgage is $67,500. The defendant's undivided one-half interest on the house is subject to a $20,000 mortgage to his attorney, Patrick Labbadia. The plaintiff's undivided one-half interest is subject to a $5,245.05 mortgage to Gould Gillen, her former attorneys.
The parties lived together in the house until the defendant vacated the property in June 1999. Once the defendant moved out, the mortgage fell into arrears and the condition of the property began to deteriorate. On November 1, 1999 the parties reached an agreement, which was approved by the court on the same day, that the parties would "cash in" their IRA's, and give the proceeds to their respective attorneys who would apply the proceeds to the mortgage arrearage.
The plaintiff did not comply with the order immediately. On November 8, 1999 her attorney withdrew from the case. After that date, the plaintiff continued to live in the house and refused to communicate with the defendant's attorney about applying her IRA balance to the mortgage arrearage. She also failed to make current mortgage payments. As a result, the bank began to foreclose on the mortgage. On January 24, 2000 the court (Munro, J.) heard the defendant's motion for contempt. The court file is unclear about whether the court actually held the plaintiff in contempt. But, the court ordered the plaintiff to turn over her IRA proceeds to defendant's attorney immediately. The court further ordered that: 1) each party shall pay one-half of the balance necessary to make up the foreclosure repayment amounts within 14 days, 2) if the plaintiff CT Page 4289 failed to make her sums up, the defendant could at his discretion, make up the plaintiff's share, and receive a credit against his child support obligations, 3) the defendant was given the option to pay the monthly payments for November, December and January and argue for reimbursement from the property settlement or against any child support or alimony order, 4) after the reinstatement of the mortgage, the plaintiff shall be responsible for paying the mortgage payments, 5) if she does not make the payments in February or March, the defendant is allowed to pay it and take it out of his child support.
In order to reinstate the mortgage the parties had to pay the missed payments for July 1999-February 2000. In addition, the parties were obligated to pay the bank's attorney's fees and costs of $2,232 for commencing the foreclosure and negotiating the reinstatement. Although there were no orders requiring either party to pay the mortgage until the January 24, 2000 order, the plaintiff had sole occupancy of the house during the period from July 1999 through January 2000 and had sufficient income from various sources to pay it. Her explanations about why she failed to pay the mortgage are not credible. Finally, in February, the mortgage was reinstated. The plaintiff contributed $1,362.70 from her IRA and $600 in cash. The defendant contributed $4,787.09 from his IRA and $600 in cash.
The defendant claims that in any property settlement he should be entitled to an offset based upon the plaintiff's failure to pay the mortgage in a timely manner. An offset is justified for the following items:
1. Seven months of mortgage payments (July 1999 through January 2000). The monthly mortgage payment with the late charge included was $858.53. This totals $6,009.71 for seven months. But, the plaintiff should get credit for the $1,962.70 which she contributed toward the reinstatement of the mortgage. This reduces the total offset for this item to $4,047.01.
2. The bank's counsel fees and court costs of $2,232 caused by the plaintiff's failure to comply in a timely manner with the order to cash in her IRA.
3. The defendant has requested that he be given an offset for his own counsel fees and those of the attorney for the minor child incurred in the redemption of the mortgage. There is no question that the defendant incurred additional fees on account of the plaintiff's failure to pay the mortgage in a timely manner. A fair and reasonable amount to award for these fees as well as the additional fees of the attorney for the minor child is $1,000. CT Page 4290
Therefore, the total offset to given to the defendant is $7,279.01.
The equity in the house after deduction of the first mortgage is $43,500. Considering all relevant factors, the parties ought to share this equity equally. The plaintiff's share must be reduced by the amount of the mortgage to Gould Gillen in the amount of $5,245.05, and the amount of the total offset of $7,279.01.
The parties also owe the attorney for the minor children, Attorney Deb Blood, the sum of $19,052. These fees are found to be fair and reasonable. The parties ought to be equally responsible for payment. The last paragraph of the stipulation as to custody and visitation reads:
"The parties agree to execute a mortgage and Note secured on the Clinton, Connecticut property in the amount of the fees for the counsel for the minor children, payable in regular installments to be determined."
The parties will be ordered to execute the promissory note and mortgage to Attorney Blood within 30 days.
When the mortgage to Attorney Blood is added to the other encumbrances on the property the result is as follows:
Value of house $111,000.00
Less:
Liberty Bank $67,500.00
Labbadia mtg. $20,000.00
GG mtg. $5,245.05
Blood mtg. $19,052.00 $111,797.05
Equity deficit ($797.05)
Looking only at the plaintiff's share of the equity the figures are as follows:
Value of house $111,000.00
 Less Liberty Bank $67,500.00
$43,500.00
CT Page 4291
50% $21,750.00
Less:
GG mtg. $5,245.05
Offsets $7,279.81
50% AMC $9,526.00 $24.050.86
Plaintiff's equity deficit ($300.86)
The disposition of the house will be handled by ordering the plaintiff to convey her interest in the house to the defendant subject to all of the encumbrances. The defendant will be ordered to pay all of the encumbrances and to indemnify and hold the plaintiff harmless from responsibility for these debts. As part of the property division the plaintiff will not be required to pay the $300.86 to the defendant.
The plaintiff continued to live in the house and paid the February, March, and April mortgage payments. In April 2000 the plaintiff began to move out of the house to an apartment in East Haddam subleased from her boy friend. Although she continued to live in the Clinton house part time through the end of the school year in June, she did not make the May mortgage payment or any others thereafter. But, rather than surrendering possession of the house to the defendant as he requested, the plaintiff allowed her teenage son to live in the house alone through the summer. The plaintiff also stopped paying the electric bill and the power was turned off. The plaintiff's son made a mess of the house and yard, and the plaintiff failed to maintain the house. It took a court order (Quinn, J.) on September 14, 2000 for the defendant to finally be permitted to regain occupancy of the house. The defendant made all of the mortgage payments from May through September. The defendant deducted these payments from his child support as permitted by the January 2000 order of the court. Since taking possession of the property, the defendant has cleaned it up, has begun making major repairs, and has continued to pay the mortgage. He has also resumed his child support payments to the plaintiff.
The parties jointly own a 1987, thirty-four foot Catalina sailboat which the parties purchased on June 20, 1996 for $55,000. The boat was financed with Sun Trust Bank for $40,000. The $15,000 which the parties put into the purchase came from the sale of another sailboat owned by the defendant at the time of the marriage. The present principal balance on the loan is $33,713.44. The monthly finance payment is $388 which has CT Page 4292 been made by the plaintiff since the separation. The defendant has also paid all of the docking fees and maintenance expenses. Both parties presented excerpts from marine valuation guides as evidence of the present value of the boat. These guides are not very helpful as they depend so much on the condition of the boat, a topic about which there was disagreement. The best evidence of value is the figure of $35,000 which was used on the bankruptcy petition filed by the parties in 1999. Therefore, there is little or no equity in the boat above the balance of the financing. The defendant wants the boat and is willing to assume full responsibility for the financing.
The parties each own 40% of the stock of Rob Gamble Digital Images, Inc., the business operated by the defendant. The third stockholder, Peter Wnek, owns the remaining 20% of the stock. Digital Images does copying and photography work. The plaintiff was corporate secretary and worked for the company during the marriage doing book work. There is no reliable evidence of the value of Rob Gamble Digital Images, Inc. The plaintiff values the corporation at $75,000-$100,000 while the defendant claims that the business has no value. Rather than speculate on the value and order a "buy-out" by the defendant, the parties will retain their stock ownership without any change.
The purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his or hers. Beede v.Beede, 186 Conn. 191, 195 (1982). The property division in this case is dictated by economic reality. The boat and the house have debt which approximately equals their value. The defendant wants them, the plaintiff does not. Therefore, the defendant will be awarded the house and boat subject to all of the debt. The corporate stock has uncertain value. Certainly the business has value in that it allows the defendant to support himself and pay his child support. But, without credible evidence of the value of the stock, the court is not able to order the plaintiff to transfer her stock to the defendant. Therefore, the only viable option is to maintain the status quo.
Alimony has been considered. Again, economic reality is an important consideration. There are no assets from which to award lump sum alimony. In considering periodic alimony, the court notes that there are several statutory criteria which would indicate that periodic alimony to the plaintiff would be appropriate. After payment of child support, the plaintiff will have disposable income of $484.24 per week while the defendant will have disposable income of $375.56 per week. Twenty five dollars($25) per week of alimony for six(6) years would be appropriate at this time. Although the defendant claimed that the plaintiff was cohabitating with a man, the evidence was insufficient to make that finding. Alimony will terminate in the event of cohabitation. CT Page 4293
The court issues the following orders:
1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. The Stipulation as to custody and visitation dated October 10, 2000 is incorporated by reference into this decree.
3. The defendant shall pay to the plaintiff child support in the amount of $204 per week. Child support shall be payable until each child attains the age of 18 years, but if still in high school, support shall continue through high school graduation but not beyond the age of 19 years. During the six weeks that the defendant has the children in the summer the child support is reduced to $120 per week. The parties are ordered to give notice to each other of any changes of their employment in regards to hours worked, rate of pay, and place of employment. This notice shall be provided within ten days of the change.
4. The plaintiff shall continue to provide medical and dental insurance for the minor children through the Connecticut HUSKY plan. Any co-pays or unreimbursed medical expenses for the minor children shall be divided equally by the parties.
5. The parties shall each retain their 40% stock ownership in Rob Gamble Digital Images, Inc., free and clear of any claim of the other.
6. The defendant will pay to the plaintiff alimony in the amount of $25 per week terminating on the first of any of the following events:
a. April 1, 2007;
b. Death of either party;
c. Cohabitation of the plaintiff as provided by statute;
d. Remarriage of the plaintiff.
Alimony is non-modifiable as to term only.
7. The plaintiff is ordered to convey by quit claim deed her interest in the marital home at 91 Airline Road, Clinton to the defendant within 30 days. The defendant shall take title subject to all encumbrances including the mortgage to Attorney Blood discussed below. The defendant shall indemnify and hold the plaintiff harmless from responsibility for payment of the mortgages to Liberty Bank, Attorney Labbadia, Gould CT Page 4294 Gillen, and Attorney Blood.
8. The plaintiff is ordered to convey her interest in the 1987, thirty-four foot Catalina sailboat to the defendant within 30 days. The defendant will hold title to the sailboat free and clear of any claim of the plaintiff. The defendant is ordered to pay the loan to Sun Trust Bank and to indemnify and hold the plaintiff harmless from any responsibility for that obligation.
9. The plaintiff will retain ownership of the 1992 Dodge Caravan, free and clear of any claim of the defendant. The plaintiff is ordered to pay the loan on that car and to indemnify and hold the defendant harmless from the responsibility for that loan. The defendant will retain ownership of the 1995 Mercury Villager, free and clear of any claim of the plaintiff. The defendant is ordered to pay the loan on that car and to indemnify and hold the plaintiff harmless from the responsibility for that loan.
10. The fees and costs of Attorney Deborah Blood, attorney for the minor children, the total of which is $19,052, are approved. The parties are ordered, within 30 days, to execute a promissory note and mortgage on the marital home payable as follows: $100 per month for one year at which time the note shall be payable in full. The note shall bear interest at 6% per annum and shall contain customary language regarding the payment of counsel fees and costs in the event of default. The mortgage shall be recorded immediately prior to the quit claim deed from the plaintiff to the defendant.
11. The plaintiff will be entitled to take the older child as a dependency exemption as long as she is entitled to do so as a matter of federal law. The defendant shall be entitled to take the younger child as a dependency exemption as long as he is entitled to do so as a matter of federal law and as long as he is current in his child support.
12. Each party shall be responsible for the payment of his or her own counsel fees.
13. The parties will each be responsible for the debts and liabilities listed on their respective financial affidavits and will indemnify and hold each other harmless from responsibility for theses obligations.
14. Both parties have made claims for the return of personal property which they claim is wrongfully in the possession of the other party. There is insufficient evidence to make a fair and reasonable disposition of these claims. With respect to all such items of personal property shown on the proposed orders of the parties, the parties are ordered to CT Page 4295 attempt to reach agreement on an equal distribution based upon fair market value. If the parties are unable to reach agreement, the parties are referred to Family Relations for investigation, conciliation, and report.
15. The plaintiff's maiden name, Melissa Stevens, is restored.
JOHN W. PICKARD, JUDGE OF THE SUPERIOR COURT